| | |
|---|---|
| SHEILA SCHMITZ and AUDREY MACHNIK, Individually and on Behalf of All Others Similarly Situated, ) ) ) ) Plaintiff, ) ) vs. ) ) LTD FINANCIAL SERVICES LP and FIRST SAVINGS BANK, ) ) ) ) Defendant. ) | Case No.: 18-cv-167 **CLASS ACTION COMPLAINT** **Jury Trial Demanded** |

## INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats.

## JURISDICTION AND VENUE

2.      The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.      Plaintiff Sheila Schmitz ("Schmitz") is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.      Plaintiff Audrey Machnik ("Machnik") is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5.      Each plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes.

6.     Each plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that she engaged in a consumer transaction.

7.     Defendant LTD Financial Services, LP ("LTD") is a foreign limited partnership with its principal place of business located at 7322 Southwest Freeway Ste 1600, Houston, Texas 77074.  Its registered agent in Wisconsin is C T Corporation System, 301 S. Bedford St., Suite 1, Madison, Wisconsin 53703.

8.     LTD is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9.     LTD is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

10.     LTD is licensed as a "Collection Agency" by the Division of Banking in the Wisconsin Department of Financial Institutions pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg 74.

11.     LTD is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

12.     Defendant First Savings Bank ("First Savings") is a foreign bank, with its principal place of business located at 201 North 3rd Street, Beresford, South Dakota 57004.  Its registered agent is Rick Christensen, 201 North Third, Beresford, South Dakota 57004.

13.     First Savings issues credit cards account, including the First Savings Credit Card. https://firstsavingscc.com/.

14.      First Savings does substantial business in Wisconsin.

15.     Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, *directly or indirectly*, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to

2

collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added).

16.     Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

17.     First Savings is a "debt collector" under Wisconsin law, in that it collects consumer debts owed to itself, both directly and indirectly through collection agencies.

18.     First Savings is a "merchant" as defined in the WCA, as the alleged debt arose from use of Plaintiff's consumer credit account. Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.")

19.     The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

20.     The Wisconsin Department of Financial Institutions has likewise noted that merchants and creditors are "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

21.     First Savings uses third-party debt collection agencies, including LTD, to collect consumer debts.

22.     First Savings, directly or indirectly, is a "debt collector" under this arrangement. Wis. Stat. § 427.103(3).

23.     Any company meeting the definition of a "debt collector" (here, First Savings) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

## FACTS

### *Facts Relating to Plaintiff Schmitz*

24.     On or about March 6, 2017, Defendant mailed a debt collection letter to Schmitz regarding an alleged debt. A copy of this letter is attached to this complaint as Exhibit A.

25.     Upon information and belief, Exhibit A is a form letter, generated by computer and with information specific to Schmitz inserted by computer.

26.     Upon information and belief, Exhibit A is a form debt collection letter, used by Defendant LTD to attempt to collect alleged debts.

27.     Upon information belief, Exhibit A was the first written communication that Defendant LTD mailed to Schmitz regarding this alleged debt.

28.     Exhibit A contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that debt collectors send within five days of the initial communication:

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment, if any, and mail you a copy of such verification or judgment. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit A.

29.     Immediately below the validation notice, Exhibit A also contains the following:

4

You may call this office to discuss this debt at 1-800-741-2100, ask for MIKE GATES. Please refer to the reference number above.

Exhibit A.

30.     The statement that the consumer "may call this office to discuss this debt" contradicts and overshadows the consumer's verification rights under 15 U.S.C. §§ 1692g(a)(4) and 1692g(a)(5), which can only be triggered if the consumer communicates her dispute or request for verification in writing. 15 U.S.C. § 1692g(b); *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 638 (N.D. Ill. Sept. 24, 2002) ("Because Crawford's letter might leave a consumer with the mistaken impression that it is sufficient to dispute the debt by telephone, we find that McCabe adequately states a claim under § 1692g(a)(4)"); *see also McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. July 8, 2003); *Chandler v. Eichel*, 2017 U.S. Dist. LEXIS 156168, at* 9 (S.D. Ind. Sept. 25, 2017) (citing *McCabe*, 272 F. Supp. 2d at 743-44).

31.     Many reasons why a consumer would call "to discuss" a debt, for example that the debt is not owed, that the debt collector is dunning the wrong person, or that the amount of the debt is wrong are actually disputes. As discussed below, a consumer's question about whether the "creditor account number" is correct on Exhibit A (and it is not) would also be a dispute.

32.     The false statement that the consumer can call with a dispute rather than submit a dispute in writing, or that both methods of communication are equivalent, misleads the consumer into not successfully exercising her validation rights under 15 U.S.C. § 1692g(b), which includes a temporary cessation of collection activities until verification is provided.

33.     Exhibit A also contains the following:

Case 2:18-cv-00167-JPS     Filed 01/30/18     Page 5 of 25     Document 1

```
CREDITOR:
BARCLAYS BANK DELAWARE
ORIGINAL CREDITOR:
BARCLAYS BANK DELAWARE
CREDITOR ACCOUNT #:
XXX9792

LTD REF NO:        ██████8647
BALANCE:        $2,330.98
```

Exhibit A.

34.     Exhibit A states that the "CREDITOR" of the debt is "BARCLAYS BANK DELAWARE," and that the "ORIGINAL CREDITOR" of the debt is "BARCLAYS BANK DELAWARE" ("Barclays").

35.     Exhibit A further states that the "CREDITOR ACCOUNT #" ends in 9792, the "LTD REF NO" ends in 8647, and the "BALANCE" is $2,330.98.

36.     Exhibit A also contains a payment remittance slip, which includes the following:

```
           LTD REF NO:     ██████8647
CREDITOR ACCOUNT #:  XXX9792

        BALANCE:        $2,330.98
```

Exhibit A.

37.     The remittance slip in Exhibit A restates the "LTD REF NO" and the "CREDITOR ACCOUNT #."

38.     Upon information and belief, the debt LTD is attempting to collect is a "Juniper MasterCard," owned and issued by Barclays, and associated with an account number ending in 0299. A copy of an account statement for this account dated November 16, 2016 is attached to this complaint as Exhibit B.

39.     Exhibit B contains the following account information:

6



Exhibit B.

40. Exhibit A as a whole is false, deceptive, misleading, and confusing in its identification of the debt and its creditor.

41. Exhibit A states that the "CREDITOR ACCOUNT #" ends in 9792 but Exhibit B states that the account number ends in 0299.

42. The confusion engendered by Exhibit A is compounded by the fact that Defendant LTD is collecting on an account that is past due and Exhibit A states that Barclays is both the "CREDITOR" and the "ORIGINAL CREDITOR." *See Tourgeman v. Collins Fin. Servs.*, 755 F.3d 1109, 1119 n. 6 (9th Cir. 2014) (misidentification of an account number can be a material false statement).

43. The unsophisticated consumer is aware that "bad" consumer debts, including past-due credit card accounts, may be sold to third-party debt buyers, often within weeks of the account "charging off."

44. The unsophisticated consumer is also aware that third-party debt buyers generally assign purchased accounts new account numbers.

45. The unsophisticated consumer, receiving Exhibit A, would be confused and misled as to whether LTD correctly identified the current creditor in its letter, which named

7

Barclays as the original creditor and provided a creditor account number that was different from the number associated with her Barclays account.

46. The unsophisticated consumer, receiving Exhibit A, would be confused and misled as to the character of the debt and whether it had been sold to a third-party debt buyer.

47. The unsophisticated consumer, receiving Exhibit A, would be confused and misled as to the identity of the debt and its creditor.

48. The unsophisticated consumer, receiving Exhibit A, would be confused and misled as to whether the Exhibit A was sent to collect on an account that was not hers.

49. Schmitz was confused and misled by Exhibit A.

50. The unsophisticated consumer would be confused and misled by Exhibit A.

51. Schmitz had to spend time and money investigating Exhibit A.

52. Schmitz had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Schmitz on the consequences of Exhibit A.

***Facts Relating to Plaintiff Machnik***

***First Savings' October 21, 2016 Account Statement and November 4, 2016 Letter***

53. On or about October 21, 2016, First Savings mailed an account statement to Machnik regarding an alleged debt, allegedly owed to First Savings and associated with Machnik's "First Savings Credit Card" credit card account with an account number ending in 7289. A copy of this account statement is attached to this complaint as Exhibit C.

54. Upon information and belief, Exhibit C is a form account statement, generated by computer, and with the information specific to Machnik inserted by computer.

55. Exhibit C states:

8

| ACCOUNT SUMMARY | | PAYMENT INFORMATION | |
| --- | --- | --- | --- |
| Credit Limit | $400.00 | New Balance | $446.26 |
| Credit Available | $46.00- | **Minimum Payment Due** | **$112.26** |
| Statement Closing Date | October 21, 2016 | **Payment Due Date** | **November 16, 2016** |

Exhibit C.

56.     Exhibit C states that, as of October 21, 2016, Machnik's account ending in 7289 had a "New Balance" of $446.26, with a "Payment Due Date" of November 16, 2016, and a "Minimum Payment Due" of $112.26.

57.     On or about November 4, 2016 First Savings mailed Machnik a debt collection letter regarding the same alleged debt, allegedly owed to First Savings. A copy of this account statement is attached to this complaint as Exhibit D.

58.     Upon information and belief, Exhibit D is a form letter, generated by computer, and with the information specific to Machnik inserted by computer.

59.     Upon information and belief, Exhibit D is a form debt collection letter, generated by computer, and used by First Savings to attempt to collect alleged debts.

60.     Exhibit D contains the following:

```
RE: Account number ending in 7289

Credit Limit: $400            Delinquent Amount: $30.00
Current Balance: $446.26    Amount Overlimit: $46.26
Minimum Payment Due: $66.00

Dear: Audrey J Machnik:

This letter is to bring to your attention that your credit card
account is delinquent. The minimum payment due by your next
scheduled due date is $66.00.
```
Exhibit D.

61.     Exhibit D, mailed on November 4, 2016, just a few days after First Savings mailed Exhibit C to Machnik, contains account information that contradicts and conflicts the account information in Exhibit C.

9

62. Exhibit C states that, as of October 21, 2016 the minimum payment due on November 16, 2016 was $112.26 but Exhibit D, sent during the same billing cycle, states that "the minimum payment due by your next scheduled due date is $66.00."

63. Machnik was confused and misled by the contradiction between Exhibit C and Exhibit D.

64. The unsophisticated consumer would be confused and misled by the contradiction between Exhibit C and Exhibit D.

### First Savings' February 19, 2017 Account Statement and LTD's February 23, 2017 Letter

65. On or about February 19, 2017, First Savings mailed an account statement to Machnik regarding an alleged debt, allegedly owed to First Savings and associated with Machnik's "First Savings Credit Card" credit card account with an account number ending in 7289. A copy of this account statement is attached to this complaint as Exhibit E.

66. Upon information and belief, Exhibit E is a form account statement, generated by computer, and with the information specific to Machnik inserted by computer.

67. Exhibit E states:

AUDREY J MACHNIK                                        Account Number: XXXX XXXX XXXX 7289

| ACCOUNT SUMMARY | | PAYMENT INFORMATION | |
| --- | --- | --- | --- |
| Credit Limit | $400.00 | New Balance | $585.09 |
| Credit Available | $185.00- | Minimum Payment Due | $387.09 |
| Statement Closing Date | February 19, 2017 | Payment Due Date | March 16, 2017 |

Exhibit E.

68. Exhibit E states that, as of February 19, 2017, Machnik's account ending in 7289 had a "New Balance" of $585.09, with a "Payment Due Date" of March 16, 2017, and a "Minimum Payment Due" of $387.09.

69.     On or about February 23, 2017 LTD mailed Machnik a debt collection letter regarding the same alleged debt, allegedly owed to First Savings.   A copy of this account statement is attached to this complaint as <u>Exhibit F.</u>

70.     Upon information and belief, <u>Exhibit F</u> is a form letter, generated by computer, and with the information specific to Machnik inserted by computer.

71.     Upon information and belief, <u>Exhibit F</u> is a form debt collection letter, generated by computer, and used by First Savings to attempt to collect alleged debts.

72.     Upon information and belief, <u>Exhibit F</u> is the first written communication LTD mailed to Machnik regarding the alleged debt referenced in <u>Exhibit F</u>.

73.     <u>Exhibit F</u> contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors mail to alleged debtors along with, or within five days of, the initial written communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment, if any, and mail you a copy of such verification or judgment.  If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

<u>Exhibit F</u>.

74.     Immediately below the validation notice, <u>Exhibit A</u> also contains the following:

> You may call this office to discuss this debt at 1-877-754-0013, ask for BILL LARRY.  Please refer to the reference number above.

<u>Exhibit F</u>.

75.     The statement that the consumer "may call this office to discuss this debt" contradicts and overshadows the consumer's verification rights under 15 U.S.C. §§ 1692g(a)(4) and 1692g(a)(5), which can only be triggered if the consumer communicates her dispute or request for verification in writing.  15 U.S.C. § 1692g(b); *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 638 (N.D. Ill. Sept. 24, 2002) ("Because Crawford's letter might leave a consumer

11

with the mistaken impression that it is sufficient to dispute the debt by telephone, we find that McCabe adequately states a claim under § 1692g(a)(4)"); *see also McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. July 8, 2003); *Chandler v. Eichel*, 2017 U.S. Dist. LEXIS 156168, at\* 9 (S.D. Ind. Sept. 25, 2017) (citing *McCabe*, 272 F. Supp. 2d at 743-44).

76.     Many reasons why a consumer would call "to discuss" a debt, for example that the debt is not owed, that the debt collector is dunning the wrong person, or that the amount of the debt is wrong are actually disputes. As discussed below, a consumer's question about whether the debt has been accelerated as of the date the letter was sent (and it had not been) would also be a dispute.

77.     The false statement that the consumer can call with a dispute rather than submit a dispute in writing, or that both methods of communication are equivalent, misleads the consumer into not successfully exercising her validation rights under 15 U.S.C. § 1692g(b), which includes a temporary cessation of collection activities until verification is provided.

78.     <u>Exhibit F</u> also contains the following:



<u>Exhibit F</u>.

79.     <u>Exhibit F</u> also contains a payment remittance slip, which states the following:



<u>Exhibit F</u>.

80. Exhibit F, mailed on February 23, 2017, just a few days after First Savings mailed Exhibit E to Machnik, contains account information that contradicts and conflicts with the account information in Exhibit E.

81. Exhibit E states that, as of February 19, 2017 the minimum payment due on March 16, 2017 was $387.09 but Exhibit F, sent just a few days later, states that the "Balance" is $585.09 and does not reference a minimum payment at all.

82. Machnik was confused and misled by the contradiction between Exhibit E and Exhibit F.

83. The unsophisticated consumer would be confused and misled by the contradiction between Exhibit E and Exhibit F.

84. The unsophisticated consumer would be unable to determine whether the debt had been accelerated or not, or how much debt is actually due as of the date of Exhibit F. Exhibit F states that the "Balance" is $585.09 without stating an amount "due" while Exhibit E seeks only a minimum payment of $387.09. *See Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, 'owing' an amount is distinguishable from the amount 'due.'").

85. LTD and First Savings both represented the amount of the debt in a way that was confusing to the unsophisticated consumer and/or misrepresented the amount of the debt.

86. Upon information and belief, LTD and First Savings work in a scripted process to collect First Savings debts such as Machnik's.

87. Upon information and belief, LTD is fully aware of the contents and representations in Exhibit E.

13

88.     Upon information and belief, LTD is fully aware that First Savings sends account statements in the form of Exhibit E to consumers just a few days before LTD mails a letter in the form of Exhibit F.

89.     Upon information and belief, LTD is fully aware that its letter is sent during account billing cycles wherein First Savings has sent a statement to consumers seeking a "minimum payment" and not representing that the entire balance is due.

90.     Machnik was confused and misled by Exhibits E and F.

91.     The unsophisticated consumer would be confused by Exhibits E and F.

92.     Machnik had to spend time and money investigating Exhibits E and F.

93.     Machnik had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibits E and F.

### *The FDCPA*

94.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through

14

[s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

95.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive

15

debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

96. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

97. 15 U.S.C. § 1692e(2) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

98. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

99. 15 U.S.C. § 1692f generally prohibits any "unfair or unconscionable means to collect or attempt to collect a debt."

100. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

101. 15 U.S.C. § 1692g states, in part:

a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

102. The Seventh Circuit has held that a debt collector must state the required disclosures in a non-confusing manner. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000).

16

103.     While *Miller* addressed a debt collector's obligation to provide the amount of the

debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims

under § 1692g(a)(2) are the same. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317,

319 (7th Cir. 2016):

> Section 1692g(a) requires debt collectors to disclose specific information,
> including the name of the current creditor, in certain written notices they send to
> consumers.  If a letter fails to disclose the required information clearly, it violates
> the Act, without further proof of confusion.

104.     Likewise, the Seventh Circuit has held that the standards for claims under 15

U.S.C. § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d

754, 759 (7th Cir. 2006):

> We cannot accept the district court's view that claims brought under § 1692e or §
> 1692f are different from claims brought under § 1692g for purposes of Rule
> 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in
> violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are
> inquiries similar to whether a letter is confusing in violation of § 1692g. After all,
> as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the
> same: it requires a fact-bound determination of how an unsophisticated consumer
> would perceive the letter.")

### The WCA

105.     The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against

unfair, deceptive, and unconscionable business practices and to encourage development of fair

and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

106.     The Wisconsin Supreme Court has favorably cited authority finding that the

WCA "goes further to protect consumer interests than any other such legislation in the country,"

and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v.

*Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 **n.**15, 596 N.W.2d 786 (1999) (citations

omitted).

107. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

108. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

109. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

110. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

111. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

112. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly

18

adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

113.    Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

114.    Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

115.    The Wisconsin Department of Financial Institutions, which is tasked with the regulation of licensed debt collectors, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

116.    Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

117.    Wis. Stat.  § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I -- FDCPA

118.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

119.    Count I is brought on behalf of Schmitz and against LTD.

120.    Exhibit A contains false, deceptive, misleading, and confusing statements about the character of the debt and the identity of the creditor.

19

121. By misstating the creditor account number and identifying the current creditor as the "Original Creditor," Exhibit A misidentifies the debt and implies to the unsophisticated consumer that the debt has been sold to an undisclosed third-party debt buyer.

122. LTD violated 15 U.S.C. §§1692e, 1692e(2)(A), 1692e(10), and 1692g(a)(2).

## COUNT II -- FDCPA

123. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

124. Count II is brought on behalf of Machnik and against LTD.

125. Prior to sending Exhibit F, LTD was aware that First Savings had sent Machnik an account statement stating Machnik's account had a "Minimum Payment Due" of $387.09 and a "Payment Due Date" of March 16, 2017.

126. LTD represented to Machnik that Machnik's First Savings account had been accelerated by seeking to collect the entire balance and not just the amount actually due.

127. LTD misrepresented the amount, character, and legal status of the debt it was collecting.

128. LTD's attempts to collect the entire balance of Machnik's and class members' First Savings accounts were false, misleading, and confusing representations, and were also an unfair and unconscionable means of collecting a debt.

129. LTD violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

## COUNT III -- FDCPA

130. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

20

131. Count III is brought on behalf of Plaintiffs Schmitz and Machnik and against LTD.

132. Exhibits A and F contradict and overshadow 15 U.S.C. §§ 1692g(a)(4) and 1692g(a)(5) by informing the consumer that he may "call this office to discuss this debt."

133. Exhibits A and F misleadingly direct consumers to dispute debts orally, which does not invoke the protections of 15 U.S.C. § 1692g(b).

134. LTD violated 15 U.S.C. §§1692e, 1692g(a)(4), 1692g(a)(5), and 1692g(b).

## COUNT IV -- WCA

135. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

136. Count IV is brought on behalf of Schmitz and against LTD.

137. LTD is licensed as a collection agency by the Division of Banking in the Wisconsin Department of Financial Institutions.

138. Exhibit A contains false, deceptive, misleading, and confusing statements about the character of the debt and the identity of the creditor.

139. By misstating the creditor account number and identifying the current creditor as the "Original Creditor," Exhibit A misidentifies the debt and implies to the unsophisticated consumer that the debt has been sold to an undisclosed third-party debt buyer.

140. Exhibit A is a communication that violates the FDCPA and can reasonably expected to harass the customer.

141. Defendant violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

21

## COUNT V -- WCA

142.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

143.     Count V is brought on behalf of Machnik and against Defendants LTD and First Savings.

144.     Exhibits C-F contain false, deceptive, misleading, and confusing statements about the amount, character, and legal status of the debt.

145.     In Exhibit C, First Savings represented to Plaintiff that, as of October 21, 2016, her account had a "Minimum Payment Due" of $112.26 and a "Payment Due Date" of November 16, 2016 but, in Exhibit D, First Savings represented to Plaintiff that, as of November 4, 2016, the "Minimum Payment Due" was $66.00.

146.     In Exhibit E, First Savings represented to Plaintiff that, as of February 19, 2017, her account had a "Minimum Payment Due" of $387.09 and a "Payment Due Date" of March 16, 2017 but, in Exhibit F, LTD represented to Plaintiff that, as of February 23, 2017, the entire balance of the account, $585.09, was due.

147.     Exhibit F attempts to collect the debt as though it had been accelerated when it had not.

148.     Exhibit F is a communication that violates the FDCPA and can reasonably expected to harass the customer.

149.     Defendants violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## COUNT VI -- WCA

150. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

151. Count VI is brought on behalf of Machnik and against Defendant LTD.

152. LTD is licensed as a collection agency by the Division of Banking in the Wisconsin Department of Financial Institutions.

153. <u>Exhibit F</u> contains false, deceptive, misleading, and confusing statements about the amount, character, and legal status of the debt and attempts to collect amounts that are not yet due

154. <u>Exhibit F</u> is a communication that violates the FDCPA and can reasonably expected to harass the customer.

155. LTD violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## CLASS ALLEGATIONS

156. Plaintiffs brings this action on behalf of two Classes.

157. Class I ("Confusing Creditor Name Class"), consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the Complaint in this action, (c) attempting to collect a debt incurred for personal, family, or household purposes, (d) and owed to Barclays, (e) where the letter was mailed between January 30, 2017 and January 30, 2018, inclusive, (f) and was not returned by the postal service. Plaintiff Schmitz is the named representative of Class I.

158. Class II ("False Acceleration of Debt Class"), consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit F</u> to the Complaint in this action, (c) attempting to collect a debt incurred for personal, family, or

household purposes, (d) and owed to First Savings, (e) where the letter was mailed between January 30, 2017 and January 30, 2018, inclusive, (f) and was not returned by the postal service. Plaintiff Machnik is the named representative of Class II.

159. Each Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each Class.

160. There are questions of law and fact common to the members of each Class, which common questions predominate over any questions that affect only individual class members. The predominant common questions are whether Defendants violated the FDCPA and the WCA.

161. Plaintiffs' claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

162. Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

163. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

164. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiffs and the Classes and against Defendants for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  January 30, 2018

ADEMI & O'REILLY, LLP

By:      /s/ Mark A. Eldridge
         John D. Blythin (SBN 1046105)
         Mark A. Eldridge (SBN 1089944)
         Jesse Fruchter (SBN 1097673)
         Ben J. Slatky (SBN 1106892)
         3620 East Layton Avenue
         Cudahy, WI 53110
         (414) 482-8000
         (414) 482-8001 (fax)
         jblythin@ademilaw.com
         meldridge@ademilaw.com
         jfruchter@ademilaw.com
         bslatky@ademilaw.com

25